

SBR / PERINJ
**Transmittal Number: 24498275**
Date Processed: 02/18/2022

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Nicole Russ<br>Delta Air Lines, Inc<br>1030 Delta Blvd<br>Dept 982<br>Atlanta, GA 30354-1989 |
| **Electronic copy provided to:** | Melba Prevost |

| | |
|---|---|
| **Entity:** | Delta Air Lines, Inc.<br>Entity ID Number  2078129 |
| **Entity Served:** | Delta Air Lines, Inc. |
| **Title of Action:** | Nicholas Cupp vs. Delta Air. Lines, Inc |
| **Matter Name/ID:** | Nicholas Cupp's vs. Delta Air Lines, Inc., (12019673) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | Newport News Circuit Court, VA |
| **Case/Reference No:** | CL2105644T-00 |
| **Jurisdiction Served:** | Virginia |
| **Date Served on CSC:** | 02/18/2022 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | WilliamFord<br>804-694-1100 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



EXHIBIT
**Exhibit A**

# COMMONWEALTH OF VIRGINIA



NEWPORT NEWS CIRCUIT COURT
Civil Division
2500 WASHINGTON AVENUE
NEWPORT NEWS  VA  23607-4355
(757) 926-8561

Summons

To: DELTA AIR LINES, INC.
CORPORATION SERVICE COMPANY
REGISTERED AGENT
100 SHOCKOE SLIP, FL 2
RICHMOND VA 23219

Case No. 700CL2105644T-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, February 02, 2022

Clerk of Court: ANGELA F REASON

by _____Brenda Johnson_____
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name:   CORY R FORD
703-777-6535

**VIRGINIA:**

### IN THE CIRCUIT COURT OF NEWPORT NEWS

FILED

2021 DEC 16 PM 2:08

NICHOLAS W. CUPP,

Plaintiff,

v.

DELTA AIR LINES, INC.,
ENDEAVOR AIR, INC., and
CHERYL THOMAS,

Defendants.

CASE NO.: CL21056447-00

### COMPLAINT

1.     Nicholas Wayne Cupp is a disabled veteran of the United States Army and resides in Paragould, Arkansas. While serving his country for over 21 years, Nicholas was awarded the Meritorious Service Medal, a Combat Action Badge, an Army Achievement Medal, four Army Reserve Component Achievement Medals, two National Defense Service Medals, a Global War on Terrorism Expeditionary Medal, a Global War on Terrorism Service Medal, a Non-Commissioned Officer Professional Development Ribbon, an Army Service Ribbon, an Army Reserve Component Overseas Training Ribbon, An Armed Forces Reserved Medal with M Device, an Armed Forces Reserved Medal, and a Driver and Mechanics Badge. He received an Honorable Discharge from the Army in 2013.

2.     Sheila Cupp is the wife of and caregiver for Nicholas Cupp and also resides in Paragould, Arkansas. Sheila and Nicholas have two children, a grown son and "M.L.C.," a minor daughter, referred to herein by her initials to protect her privacy.

3.      Defendant Delta Air Lines, Inc., (hereafter "Delta Air Lines") is a Delaware corporation which is authorized to transact business in Virginia, which transacts business in Virginia, and which caused harm by tortious conduct in Virginia.

4.      At all material times, Defendant Delta Air Lines was a common carrier.

5.      Defendant Endeavor Air, Inc., (hereafter "Endeavor Air") is a Georgia corporation which is authorized to transact business in Virginia, which transacts business in Virginia, and which caused harm by tortious conduct in Virginia.

6.      At all material times, Defendant Endeavor Air was a common carrier and was a wholly owned subsidiary of Defendant Delta Air Lines.

7.      At all material times, Defendant Delta and Defendant Endeavor acted jointly to provide airline flights from Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia, to Newport News-Williamsburg International Airport in Newport News, Virginia.

8.      Defendant Cheryl Thomas is a resident of North Carolina and committed tortious acts in the Commonwealth of Virginia.

9.      At all material times, Defendant Cheryl Thomas was an agent and employee of Defendant Delta Air Lines and Defendant Endeavor Air and was acting in the course and scope of said agency and employment.

10.     Defendant Delta Air Lines requires its employees to report to managers, supervisors, or local authorities, as appropriate, any passenger believed to be engaged in human trafficking activities or the sexual exploitation of children.

11.     According to the Trafficking Victims Protection Act of 2000, human trafficking is defined as: "(A) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or

(B) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."

12.     Defendant Delta Air Lines claims that it has trained over 80,000 employees to identify and report human trafficking, and also claims to have provided specific training to all its flight crew members on the procedures to be followed if witnessing suspected indicators of trafficking in flight and in the airport.

13.     Defendant Delta Air Lines failed to properly train its employee Cheryl Thomas to identify and report human trafficking and sexual exploitation.

14.     Defendant Delta Air Lines failed to provide a sufficient protocol for Cheryl Thomas to investigate or report suspected human trafficking and sexual exploitation.

15.     On December 18, 2019, Nicholas Cupp, Sheila Cupp, and M.L.C., along with Sheila Cupp's parents, Edgar and Kathy Miller (M.L.C.'s grandparents), were customers of Defendant Delta Air Lines and were flying on a Delta Air Lines trip from Memphis, Tennessee, to Newport News, Virginia. The purpose for the trip was to attend Nicholas and Sheila's son's (M.L.C's older brother's) graduation from the United States Coast Guard training facility's A school.

16.     Plaintiff and his family booked their flight through Defendant Delta Air Lines and, in so doing, provided information concerning their family relationship to Defendant Delta Air Lines.

17.     On December 18, 2019, the Cupp family checked in together with Defendant Delta Air Lines in Memphis, Tennessee, with no incident, as they were related, law abiding, photo identification carrying paying passengers on a domestic flight with good intent.

18.     At all times, Nicholas Cupp was in possession of valid photo identification.

19.     At all times, Sheila Cupp was in possession of valid photo identification.

20.    At all times, M.L.C. was in possession of valid photo identification in the form of a military identification card.

21.    The boarding passes Defendant Delta Air Lines issued to the Cupp family showed identical PNR numbers.

22.    After checking in on December 18, 2019, the Cupp family passed through all Transportation Security Administration checkpoints in Memphis, Tennessee, with no incident. This was because all members of the Cupp family were related, law abiding, photo identification carrying paying passengers on a domestic flight with good intent, and the TSA clearly had no reason to flag or detain them.  Defendants were therefore aware that the Cupp family was related, possessed valid photo identification, had been checked by TSA, and had boarding passes with identical PNR numbers, and Defendants also possessed personal information and financial information provided by the Cupps at the time of booking.

23.    The Cupp family boarded Delta Air Lines flight number DL1499 in Memphis, Tennessee, with no incident.

24.    The Cupp family flew on Delta Air Lines flight number DL1499 from Memphis, Tennessee, to Atlanta, Georgia, with no incident.

25.    In Atlanta, Georgia, the Cupp family boarded Delta Air Lines flight number DL5002, heading for Newport News-Williamsburg International Airport in Newport News, Virginia, with no incident.

26.    Shortly before arrival at Newport News, the plane encountered turbulence, a common experience for passengers and employees of airlines.

27.    M.L.C., then thirteen years old, was scared by the turbulence and began crying. Her father, Nicholas Cupp, who had served in the military in the Middle East and had clearly therefore engaged in air travel before, was sitting beside her and comforted her.

28.    While Nicholas Cupp was comforting M.L.C., M.L.C.'s grandparents, Mr. and Mrs. Miller, were sitting directly in front of Nicholas and M.L.C.

29.    Unbeknownst to Plaintiffs, Defendant Cheryl Thomas wrongly and recklessly concluded that Nicholas Cupp was human trafficking his own daughter M.L.C.

30.    Unbeknownst to Plaintiffs, Defendant Cheryl Thomas contacted the captain of the flight and reported that Nicholas Cupp was trafficking M.L.C.  The captain of the flight then passed this information along to Derek Palazzone, the Delta Air Lines station manager.  Mr. Palazzone then phoned the police.

31.    Defendant Cheryl Thomas' report was entirely false and without probable cause and was the foreseeable result of Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations.

32.    At some point in time while the plane was still in the air, Defendant Cheryl Thomas modified her initial, false report of human trafficking to include sexual assault. Specifically, Defendant Cheryl Thomas reported that Nicholas Cupp had been touching his daughter M.L.C. "inappropriately" and was sexually abusing her. This report, too, was entirely false and without probable cause.

33.    Unbeknownst to Plaintiffs, as a result of Defendant Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly

recognizing and handling suspected abuse and/or trafficking situations, law enforcement officers mobilized to meet Delta Air Lines flight number DL5002 at the Newport News-Williamsburg International Airport.

34.     As a direct result of Defendant Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations, armed law enforcement officers boarded the Delta Air Lines aircraft when it landed at the Newport News-Williamsburg International Airport. Defendant Cheryl Thomas repeated her false and unsubstantiated claims of abuse and human trafficking to one or more of the armed law enforcement officers.

35.     As the Cupp family began to leave the aircraft, Defendant Cheryl Thomas pointed Plaintiff Nicholas Cupp out to one of the armed law enforcement officers who had boarded the plane.

36.     As a direct result of Defendant Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations, armed law enforcement officers physically separated M.L.C. from her parents without warning, physically took Nicholas Cupp into investigative detention and Mirandized him, and physically prevented Sheila Cupp from going to her daughter and husband for an extended period of time.

37.     Armed law enforcement officers interrogated M.L.C. as a result of Defendant Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in

properly recognizing and handling suspected abuse and/or trafficking situations. The interrogation included questions like whether her father had ever hurt her or touched her inappropriately. M.L.C. was upset and scared and was crying.

38.     Armed law enforcement officers interrogated Nicholas as a result of Defendant Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations. The interrogation included questions like whether he had ever touched his daughter in a sexual manner, and included the threat to handcuff him. The interrogation occurred in a public portion of the airport where members of the public witnessed the interrogation, as Delta Air Lines and/or Endeavor Air failed to take the slightest action to protect its innocent passengers from the consequences of their own employee's false allegations.

39.     The law enforcement officers ultimately determined that there was no probable cause to charge or arrest Nicholas Cupp.

40.     The actions of Defendant Cheryl Thomas, Defendant Delta Air Lines, and Defendant Endeavor Air caused severe and permanent harms to Nicholas Cupp.

## Count 1 – Negligence by Defendant Delta Air Lines and Defendant Endeavor Air Causing Harm to Nicholas Cupp

41.     As a common carrier, Defendant Delta Air Lines and its subsidiary Defendant Endeavor Air owed Nicholas Cupp the highest degree of practical care.

42.     Defendant Delta Air Lines and its subsidiary Defendant Endeavor Air negligently, willfully, wantonly, recklessly, and with gross negligence breached their duties by, *inter alia*:

      a.     Failing to train Cheryl Thomas in the proper manner of identifying sexual assault;

b.      Failing to train Cheryl Thomas in the proper manner of identifying human
trafficking;

c.      Failing to train Cheryl Thomas in the proper manner of investigating possible
sexual assault without making false, public, and harmful accusations against
passengers;

d.      Failing to train Cheryl Thomas in the proper manner of investigating possible
human trafficking without making false, public, and harmful accusations against
passengers;

e.      Mandating that employees report possible human trafficking without
implementing any simple common sense due diligence procedures to avoid
making false, public, and harmful accusations against passengers;

f.      Deputizing Cheryl Thomas by giving her and/or those in her chain of command,
such as the pilot, authority to initiate law enforcement interdiction of passengers
with improper training and with no oversight to check the conduct of Cheryl
Thomas, her conclusions, or to ensure that innocent passengers would not be
improperly identified as sexual abusers or human traffickers;

g.      Incentivizing its own employees to report human trafficking and/or sexual abuse
without either proper training to identify these behaviors and/or without any
oversight within the company to check the work of the reporting employee or to
otherwise guard against false reports; and

h.      Willfully disregarding the personal identification information that had already
been supplied to Defendant Delta Air Lines and Defendant Endeavor Air in the
ticket purchasing process, through Defendants' own boarding requirements,

including identification checks, and TSA checks, all of which were available to

Defendant Delta Air Lines and Defendant Endeavor Air without the intervention

of law enforcement.

43.     Defendant Cheryl Thomas was negligent, grossly negligent, and reckless in her false and

erroneous reporting that Plaintiff Nicholas Cupp was engaged in human trafficking and sexual

abuse. As the employer or employers of Defendant Thomas, Defendants Delta Air Lines and its

subsidiary Defendant Endeavor Air are vicariously liable for Defendant Thomas' conduct.

44.     As a direct and proximate result of the Defendants' negligence, recklessness, and gross

negligence, Plaintiff Nicholas Cupp suffered physical harm in the form of fragmented sleep,

nightmares, headaches, and other sequelae of severe emotional trauma, including but not limited

to a fear of interacting with his daughter in public should another false accusation be made.  The

emotional distress suffered by Nicholas Cupp is severe.  Every aspect of his life has been

fundamentally and severely altered. His doctor has concluded that his pre-existing Post-

Traumatic Stress Disorder as a result of his Army service has been significantly aggravated, and

his condition has reverted back to how it was when he first came home from Iraq.  His

medication has been increased. This severe emotional distress extends to his fear of expressing

any measure of affection to his daughter M.L.C., lest someone else reach the same false

conclusion that Defendant Cheryl Thomas did, and take M.L.C. away from him again. The

emotional distress has also taken a toll on Nicholas' marriage, as he has felt compelled to build a

figurative wall around his family in order to protect them.

   **Count 2 – Negligence by Defendant Cheryl Thomas Causing Harm to Nicholas Cupp**

45.     Plaintiffs re-allege paragraphs 1 through 44.

46.     As the employee of a common carrier, Defendant Cheryl Thomas owed Nicholas Cupp the highest degree of practical care.

47.     Defendant Cheryl Thomas negligently, willfully, wantonly, recklessly, and with gross negligence breached her duties by, *inter alia*:

     a.     Failing to utilize the proper method for recognizing potential human trafficking;

     b.     Failing to utilize the proper method for investigating potential human trafficking;

     c.     Failing to utilize the proper method for reporting potential human trafficking;

     d.     Failing to utilize the proper method for recognizing potential sexual abuse;

     e.     Failing to utilize the proper method for investigating potential sexual abuse;

     f.     Failing to utilize the proper method for reporting potential sexual abuse; and

     g.     Failing to exercise due diligence with the information available to her through her employment with Delta Air Lines to verify the Cupps as family members before initiating a human trafficking alert.

48.     As a direct and proximate result of the Defendant's negligence, recklessness, and gross negligence, Nicholas Cupp suffered physical harm in the form of emotional distress manifested by fragmented sleep, nightmares, headaches, and other sequelae of severe emotional trauma, including but not limited to a fear of interacting with his daughter in public should another false accusation be made.  The emotional distress suffered by Nicholas Cupp is severe.  Every aspect of his life has been fundamentally and severely altered. His doctor has concluded that his pre-existing Post-Traumatic Stress Disorder as a result of his Army service has been significantly aggravated, and his condition has reverted back to how it was when he first came home from Iraq. His medication has been increased. This severe emotional distress extends to his fear of expressing any measure of affection to his daughter M.L.C., lest someone else reach the same

false conclusion that Defendant Cheryl Thomas did, and take M.L.C. away from him again. The emotional distress has also taken a toll on Nicholas' marriage, as he has felt compelled to build a figurative wall around his family in order to protect them.

## Count 3 – Intentional Infliction of Emotional Distress by Defendant Cheryl Thomas Causing Harm to Nicholas Cupp

49.     Plaintiffs re-allege paragraphs 1 through 48.

50.     Defendant Cheryl Thomas' false report of sexual assault and human trafficking was reckless. Not only was the report false, but it also based upon insufficient cause, was made without any type of common sense analysis, was outlandish in light of the other family members seated around Nicholas Cupp and M.L.C. made despite the fact that no other Delta Air Lines or Endeavor Air or Transportation Security Administration official who had observed the Cupp family that day had reached a similar conclusion, and was made in violation of the training and education provided on this subject by Defendant Delta Air Lines and Defendant Endeavor Air. The fact that Defendant Cheryl Thomas apparently changed her initial report of human trafficking to a report of sexual abuse indicates that Defendant Cheryl Thomas was driven by a motivation to ensure that this particular family was singled out and treated in the way that it was.

51.     Defendant Cheryl Thomas' conduct in recklessly making a false report of sexual assault and human trafficking against a disabled veteran comforting his scared daughter during turbulence on a flight, while surrounded by his wife, his father-in-law, and his mother-in-law, all of whom booked their flights together, checked in together, passed through TSA screening together, and flew on a prior connecting flight together, leading to the surprise detention of members of the family by armed law enforcement officers, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community. While preventing human trafficking and sexual abuse on airline flights is a noteworthy objective, Defendant Cheryl Thomas ignored her training and protocols for investigating and reporting potential incidents, and instead concluded on her own, based upon innocuous behavior, that Nicholas Cupp was a human trafficker and sex abuser. Defendant Cheryl Thomas' recklessness and malice is demonstrated by the lack of probable cause, her failure to apologize, and walking right past M.L.C. in the airport after this ordeal without even looking at her..

52.    Defendant Cheryl Thomas' reckless conduct led to Nicholas Cupp and M.L.C. being separated and restrained by armed law enforcement officers who were acting upon Defendant Cheryl Thomas' false report. There is a causal connection between Defendant Cheryl Thomas' reckless conduct and the emotional distress suffered by Plaintiff. Prior to this incident, Nicholas Cupp's service-related PTSD was under control, and he was able to coach basketball, go to his children's school on Veteran's Day and talk about his service, go on date nights with his wife, and spend time with friends. After the incident, Nicholas stopped doing all of these things, and his condition worsened substantially.

53.    As a direct and proximate result of the Defendant's negligence, recklessness, and gross negligence, Nicholas Cupp suffered physical harm in the form of emotional distress manifested by fragmented sleep, nightmares, headaches, and other sequelae of severe emotional trauma, including but not limited to a fear of interacting with his daughter in public should another false accusation be made. The emotional distress suffered by Nicholas Cupp is severe. Every aspect of his life has been fundamentally and severely altered. His doctor has concluded that his pre-existing Post-Traumatic Stress Disorder as a result of his Army service has been significantly aggravated, and his condition has reverted back to how it was when he first came home from

Iraq. His medication has been increased. This severe emotional distress extends to his fear of expressing any measure of affection to his daughter M.L.C., lest someone else reach the same false conclusion that Defendant Cheryl Thomas did, and take M.L.C. away from him again. The emotional distress has also taken a toll on Nicholas' marriage, as he has felt compelled to build a figurative wall around his family in order to protect them.

### Count 4 – Tortious Interference with Parental Rights by Defendant Cheryl Thomas Causing Harm to Nicholas Cupp

54.     Plaintiffs re-allege paragraphs 1 through 53.

55.     At all times, Plaintiff Nicholas Cupp, as father of M.L.C., had a right to maintain his parental relationship with his daughter M.L.C..

56.     Defendant Cheryl Thomas intentionally interfered with Nicholas Cupp's parental relationship with his daughter M.L.C. by making a false report that caused M.L.C. to be physically prevented from returning to her parents' care by armed law enforcement officers. Nicholas Cupp was prevented from comforting, speaking with, or reassuring his daughter while she was being interrogated by armed law enforcement officers about the false and outrageous allegation invented by Defendant Cheryl Thomas. M.L.C. was removed from her parents' care and custody and was subjected to an interrogation by armed law enforcement officers about whether her father had committed sexual abuse of her.

57.     Defendant Cheryl Thomas' intentional interference caused harm to Nicholas Cupp's parental relationship with his daughter M.L.C. Defendant Cheryl Thomas' false and outrageous allegation has caused the relationship between Nicholas Cupp and his daughter M.L.C. to deteriorate. For example, M.L.C. is afraid to show affection to her father or even be in close proximity to him in public, Nicholas Cupp tries to avoid going places alone with M.L.C., M.L.C.

is afraid for her father to try to teach her to drive, and Nicholas Cupp used to coach M.L.C.'s

basketball team, allowing them to spend meaningful time together; now, Nicholas has stopped

coaching and M.L.C. has stopped playing basketball

58.     As a result of Defendant Cheryl Thomas' intentional interference, Plaintiff has suffered

harm. The relationship between father and daughter has been damaged, and both Nicholas and

M.L.C. remain in therapy to try to deal with the physical and emotional consequences of

Defendant Cheryl Thomas' intentional, reckless, false, and outrageous accusations.

## Count 5 – False Imprisonment of Nicholas Cupp

59.     Plaintiffs re-allege paragraphs 1 through 58.

60.     Defendants aforementioned acts of negligence, gross negligence, and recklessness

culminated in the legal detention, without probable cause, of Nicholas Cupp.

61.     Upon being separated from his family aboard an aircraft and detained by armed law

enforcement officers at the behest of, and due to the negligence, gross negligence, and

recklessness of the Defendants, jointly and severally, Nicholas Cupp's freedom of movement

was restricted, and he reasonably believed he had to submit to the authority of armed law

enforcement officers because he was threatened with being handcuffed if he did not cooperate.

62.     Nicholas Cupp's false imprisonment and unlawful detention was without probable cause,

owing itself only to the false allegations negligently, grossly negligently, and recklessly made by

Cheryl Thomas and Delta's (and/or Endeavor's) failure to properly train her and implement

internal checks and/or due diligence protocols to prevent false allegations of human trafficking

and sexual abuse, as previously described in this Complaint.  The foreseeable consequence of

this false allegation being transmitted to law enforcement was to cause law enforcement to detain

Plaintiff Nicholas Cupp, resulting in his false imprisonment as a result of the Defendants'
actions.

   *WHEREFORE*, the Plaintiff, Nicholas Cupp, by counsel, demands judgment against the
Defendants, jointly and severally, for compensatory damages in the amount of TEN MILLION
DOLLARS ($10,000,000.00), or such greater amount as may be warranted by the evidence at
trial, and THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00) in punitive
damages, plus interest from the date of injury pursuant to Va. Code Ann. § 8.01-382 (1950, as
amended), together with all costs, expenses, fees, and all such further relief as may be
recoverable under applicable law.

                                        NICHOLAS CUPP

                                    By: _____

                                            Of Counsel


William E. Johnson (VSB No. 27810)
The Johnson Law Center
6558 Main Street, Suite 6
Gloucester, Virginia 23061
(804) 694-1111
(804) 694-1100 Facsimile

Cory R. Ford (VSB No. 68153)
Peter A. Pentony (VSB No. 94012)
WILLIAMSFORD
101 Loudoun Street, S.W.
Leesburg, Virginia 20175
(703) 777-6535
(703) 777-6963 Facsimile

*Counsel for Plaintiff*

**VIRGINIA:**

### IN THE CIRCUIT COURT OF NEWPORT NEWS

| | |
|---|---|
| **NICHOLAS W. CUPP,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :**CASE NO.: CL2105644T-00** |
| | : |
| **DELTA AIR LINES, INC.,** | : |
| **ENDEAVOR AIR, INC., and** | : |
| **CHERYL THOMAS,** | : |
| | : |
| **Defendants.** | : |
| | : |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DELTA AIR LINES

Plaintiff, Nicholas W. Cupp, by counsel, serves the following First Set of Interrogatories and Requests for Production of Documents to Defendant Delta Air Lines, Inc. Responses are to be served at the law offices of counsel for Plaintiff, WilliamsFord 101 Loudoun Street SW, Leesburg, Virginia 20175, on or before 28 days after service of this request.

### 1. DEFINITIONS

A.      "You" and "your" refer to the Defendant answering these discovery requests, his or her agents, employees, representatives, attorneys, experts, investigators, and anyone acting on his or her behalf. In this case, "you" and "your" will specifically refer to Delta Air Lines, Inc., hereinafter simply referred to as "Delta."

B.      The "Incident" refers to the incident that occurred on December 18, 2019 aboard flight number DL5002 and at Newport News-Williamsburg International Airport as described in the Complaint.

C.      "Person" means any individual, corporation, limited liability company, partnership,

association, company, business, trust, joint venture or other legal entity.

D.      "Document" means any written, recorded or graphic matter however produced or

reproduced, including, but not limited to, reports, records, lists, memoranda, correspondence,

telegrams, schedules, invoices, purchase orders, photographs, sound recordings, or films.

E.      "Identify" when used in reference to an individual person means to state his or her full

name, present or last known position and business affiliation, present home and business

addresses, and present home and business telephone number.

F.      "Identify" and "identification," and "describe" and "description," when used in reference

to a document, mean to state the name or title of the document, the type of document (for

example, letter, memorandum, telegram, chart, etc.), its date, the person(s) who authorized it, the

person(s) who signed it, the person(s) to whom it was sent, and its present location and

custodian.  If any such document was but is no longer in your possession or subject to your

control, state what disposition was made of it and explain the circumstances surrounding and the

authorization for such disposition, and state the date or approximate date of the document.

G.      The singular of any word or phrase shall include the plural.

H.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of the discovery request all responses that might otherwise be

construed to be outside of its scope.

I.      The term "any" shall be construed as any and all.

## 2. INSTRUCTIONS

A.      If in responding to these interrogatories you encounter any ambiguity in construing either

a specific interrogatory, or a definition or instruction relevant to the interrogatory, set forth the

matter deemed ambiguous and the construction selected or used in answering the interrogatory.

B.      These interrogatories are continuing in nature and require you to file supplemental

answers promptly if at any time prior to trial you obtain additional or different information

responsive to any of the interrogatories.

### 3.  PRIVILEGE AND WORK PRODUCT

Whenever an interrogatory calls for the identity or description of a document or non-

written communication claimed by you to be privileged or protected by the work product

doctrine, include in your answer to such interrogatory a list of all such documents, identifying

each document by date, addressee, author, title, and subject matter.  In addition, your answer

should identify those persons who have seen the documents or who were sent copies.  Finally,

your answer should state the ground on which such document is considered privileged or work

product.

### INTERROGATORIES

1.      State the full name, address, and occupation of the person Answering this

discovery on behalf of Delta Air Lines, as well as what materials you have reviewed in order to

supply these discovery responses.

**ANSWER:**

2.      State with particularity each and every reason that Delta reported Mr. Cupp to the

police on December 18, 2019, as well as the particularized factual bases therefor.

**ANSWER:**

3.      Identify all measures that Delta took to verify that M. Cupp was the biological

daughter of Nicholas Cupp before contacting the police.

**ANSWER:**


4.      Identify each and every step of the investigation performed by Delta and all communications regarding the same during the flight which is the subject of this lawsuit.

**ANSWER:**


5.      Identify each and every entity, whether governmental or not (including internal departments within Delta), that Delta contacted to verify the identify or family connections between the Cupp family prior to communicating a potential child trafficking/child abuse situation to law enforcement, and state with specificity the manner of those contacts and/or communications and the time the attempt was made.

**ANSWER:**


6.      Identify each and every training module, class, online module, and every other educational training Cheryl Thomas participated in while a Delta employee regarding recognizing and/or reporting child trafficking and child abuse prior to the date of this incident.

**ANSWER:**


7.      Identify all measures parents should undertake to prove to Delta that a child accompanying that adult is in fact their child.

**ANSWER:**

8.      Identify all actions of Nicholas Cupp that constituted either child trafficking or child abuse on December 18, 2019, stating for each such action why it is either child trafficking or child abuse.

**ANSWER:**

9.      List in chronological order all actions and the time at which the action was taken that Delta undertook to verify the identities of the Cupp family, including Nicholas and M. Cupp, prior to contacting law enforcement.

**ANSWER:**

10.     Identify all means of communication utilized to transmit information about this incident from the aircraft to anyone else or any other entity whatsoever.

**ANSWER:**

11.     Identify all policies and procedures that Delta crew members, pilots, employees, and station managers were to follow in the event of a suspected human trafficking and/or child abuse situation on an aircraft that were in effect on the date of the Incident.

**ANSWER:**

12.     Identify any handheld electronic devices, passenger manifestos, and any and all passenger information available to Cheryl Thomas on the day of the Incident.

**ANSWER:**

13.     Identify all communications any crew member or any employee or agent of Delta had with tower personnel (ATC) at Newport News/Williamsburg International Airport on the day of the Incident.

**ANSWER:**


14.     Identify all policies and procedures Delta had in place on the date of the Incident to double check the conclusions of flight attendants for potential misidentifications of human trafficking and/or child abuse, and state with specificity how those procedures were utilized on the date of this Incident, giving names of personnel involved, means of communications, all actions taken, and the times any such actions were taken.

**ANSWER:**


15.     Identify all persons who have any knowledge of, may be witnesses to, or who have investigated, any of the facts involved in this case, including Plaintiff's damages, and state the subject matter as to which each such person may have knowledge, and identify all written reports and other documents generated or obtained in the course of each such investigation.

**ANSWER:**


16.     Identify each insurance policy in force or effect at the time of the incident complained of in the Complaint covering you against the risk of loss claimed herein and state the time of insurance, the name and address of the carrier, the policy limits of such coverage, and whether there are any reinsurers on the policies.

**ANSWER:**


17.     Identify each person whom you expect to call as an expert witness at trial.  For each expert witness, state the subject matter on which each expert is expected to testify; the substance of the facts and opinions to which each expert is expected to testify; a summary of the grounds for each opinion; and the educational and professional qualifications of each expert witness.

**ANSWER:**


18.     Identify specifically all personal information, identification information, and financial information that Delta had available regarding any and all members of the Cupp family from the time of initial booking of their flight through the time they actually boarded their flight on the date of the Incident.

**ANSWER:**

## REQUESTS FOR ADMISSION TO DEFENDANT

Plaintiff requests the Defendant, for purposes of this action only, to specifically admit or deny the truth of each of the following matters.

1.      Admit that Nicholas Cupp, his wife, and his daughter M. Cupp had purchased tickets with Delta and had valid boarding passes, with identical PNR numbers printed on the boarding passes.

**ANSWER:**

2.      Admit that Nicholas Cupp, his wife, and his daughter M. Cupp all showed valid photographic identification to Delta representatives in order to obtain their boarding passes.

**ANSWER:**

3.      Admit that M. Cupp is in fact Nicholas Cupp's biological daughter. If you deny this, state the exact basis for your denial.

**ANSWER:**

4.      Admit that Nicholas Cupp did not traffic or abuse his daughter on December 18, 2019. If you deny this, state the exact basis for your denial.

**ANSWER:**

5.      Admit that Nicholas Cupp was innocent of any wrongdoing on December 18, 2019. If you deny this, state the exact basis for your denial.

**ANSWER:**

      6.     Admit that Nicholas Cupp, his wife, and his daughter M. Cupp passed through TSA security checkpoints prior to boarding Delta's aircraft on December 18, 2019.

**ANSWER:**

      7.     Admit that neither Cheryl Thomas nor any other Delta representative asked Nicholas Cupp or his daughter M. Cupp to show their picture identification while onboard flight DL5002 from Atlanta to Newport News prior to reporting to law enforcement that there was a potential child trafficking or child abuse situation.

**ANSWER:**

      8.     Admit that both Nicholas Cupp and his daughter M. Cupp possessed valid, government issued photo identification and had that identification with them on the date of the incident.

**ANSWER:**

      9.     Admit that a parent comforting his or her daughter during flight, particularly turbulence, is a reasonable act that does not constitute child abuse or child trafficking.

**ANSWER:**

      10.     Admit that upon hearing Cheryl Thomas's suspicions of human trafficking, Delta had the means to cross check the Cupp boarding passes for the PNR number, as well as the

capability to check their government issued photo identification.

**ANSWER**:


11.    Admit that upon hearing Cheryl Thomas's suspicions of human trafficking, there

were other measures Delta could have taken to verify the authenticity of their identification

without having law enforcement detain them upon landing.

**ANSWER**:

## REQUESTS FOR PRODUCTION OF DOCUMENTS

The Definitions and Instructions set forth above apply to these Requests for Production and are incorporated herein by reference.  The Plaintiff, by counsel, requests the Defendant produce the following:

**Documents requested:**

1.       Any and all voice recordings capturing all or any part of any conversation or transmission about all or any part of this Incident.  This includes but is not limited to any and all Aircraft Communications, Reporting, and Addressing System ("ACARS") and National Operation Center ("NOC") recordings, radio, satellite phone, datalink, VHF, and any and all other means of communication regarding this Incident.

**RESPONSE:**

2.       Any and all ACARS and NOC logs of communications and events reported by the aircraft or crew regarding this Incident.

**RESPONSE:**

3.       Any and all documents, including but not limited to crew reports, pilot reports, FSAP or IOR reports, station manager reports, after action reports, emails, facsimiles and the like, where such document references or contains any information about this Incident.  If you claim such document to be under a privilege protection, state the author, date, and subject material of the document with enough specificity to enable a court to determine the discoverability of such document.

**RESPONSE:**

4.      Any and all videos capturing all or any part of this Incident or all or any part of the Delta crew's transmission of information from the plane to anyone else regarding this Incident.

**RESPONSE:**

5.      Any after actions reports, write-ups, commendations, warnings, disciplinary actions, firings, promotions, and any other writing or document of any kind dealing with the subject matter of this litigation.

**RESPONSE:**

6.      All marketing materials Delta used from the time period of 2015 up to the date of this Incident regarding Delta participation in anti-human trafficking measures.  This includes any and all documents disseminated to the public in any way informing the public in any manner that Delta was, is, or would be engaged or otherwise participate in anti-trafficking activities.

**RESPONSE:**

7.      All documents identified in your responses to Plaintiff's First Set of Interrogatories.

**RESPONSE:**

8.      All video tapes, photographs, taped interviews, and transcribed interviews of the Plaintiff.

**RESPONSE:**

9.      All reports, findings, memoranda, correspondence, reference materials, and

other writings provided by any expert witnesses whom you propose to call at trial.  For those that

you claim to be protected by privilege or the work product doctrine, please submit a privilege log

pursuant to Rule 4:1 (b)(6).

**RESPONSE:**

10.     Any surveillance footage taken of Plaintiff.

**RESPONSE:**

11.     All documents that you receive via power of subpoena or FOIA requests in this

matter.

**RESPONSE:**

12.     Cheryl Thomas' complete personnel file and any other documentation showing

training completed by her, including but not limited to documentation showing completion by

Cheryl Thomas of any training or educational materials concerning child trafficking or child

abuse.

**RESPONSE:**

13.     All training materials, educational materials, protocols, procedures, and any and

all other documents that Delta requires its flight attendants view or use in any child abuse and/or

child trafficking awareness training.

**RESPONSE:**

14.     Any and all documents that provide factual support for any defenses you have raised in this matter.  If you claim that a document responsive to this request is privileged or subject to protection as trial preparation material, state the claim expressly and describe the nature of the document, communication, or thing you are not disclosing or producing with sufficient specificity to allow for an assessment of the applicability of the privilege or protection in accordance with Virginia Supreme Court Rule 4:1(b)(6).

**RESPONSE:**


15.     Written documentation of all reports of passenger wrongdoing made by Cheryl Thomas.

**RESPONSE:**


16.     All training, education, and materials used by Delta to avoid false accusations of passenger misconduct.

**RESPONSE:**


17.     Cheryl Thomas' employment and disciplinary files.

**RESPONSE:**

18.     All changes made to Delta policies and procedures as a result of the incident that is the subject of this lawsuit.

**RESPONSE:**


19.     The contents of all Delta app communications from and to Cheryl Thomas at any

time on December 18, 2019.

**RESPONSE:**

      20.     Delta's Standard Operating Procedure for reporting suspected human trafficking on flights.

**RESPONSE:**

      21.     Delta's Standard Operating Procedure for reporting suspected sexual abuse on flights.

**RESPONSE:**

      22.     All reports filed by the Captain of Flight DL5002 for any reason on the date of the Incident, as well as all reports which concerned the Incident filed by the Captain of Flight DL5002 on any other date.

**RESPONSE:**

      23.     All reports of calls to 911 by any Delta employee concerning the incident.

**RESPONSE:**

      24.     All reports filed by any other crew on Flight DL5002 on the day of the incident.

**RESPONSE:**

      25.     All reports filed by any Delta crew on Flight DL1499 on the date of the Incident.

**RESPONSE:**

      26.     All logs, reports, notes, memoranda, recordings, transcripts, and records of calls from Flight DL5002 to Delta Operations Center on the date of the incident.

**RESPONSE:**

27.     All logs, reports, notes, memoranda, recordings, transcripts, and records of calls
from Flight DL5002 to Delta's Newport News Station Manager on the date of the incident.

**RESPONSE:**

28.     All logs, reports, notes, memoranda, recordings, transcripts, and records of calls
from Delta's Newport News Station Manager to and from Delta Operations Center on the date of
the incident.

**RESPONSE:**

29.     All records showing the number of human trafficking interventions on Delta and
its subsidiaries' aircraft in 2018, 2019, 2020, 2021.

**RESPONSE:**

30.     All records showing the number of the interventions identified in response to
Request 29 that were erroneous.

**RESPONSE:**

31.     Cheryl Thomas' payroll history.

**RESPONSE:**

32.     All records showing the number of sexual assault interventions on Delta and its
subsidiaries' aircraft in 2018, 2019, 2020, 2021.

**RESPONSE:**

33.     All records showing the number of the interventions identified in response to Request 32 that were erroneous as well as all records showing the interventions identified in response to Request 32 were not erroneous.

**RESPONSE:**

34.     All records showing disciplinary measures taken by Delta toward Cheryl Thomas as a result of the incident that is the subject of this lawsuit.

**RESPONSE:**

35.     All records showing the identities of all crew on Flight DL5002 on the date of the incident.

**RESPONSE:**

36.     Any and all policies, procedures, memoranda, or any other corporate document regarding rewarding, promoting, marketing, commending, or otherwise highlighting any employee who participated in anti-trafficking activities.

**RESPONSE:**

NICHOLAS CUPP
By Counsel

Cory R. Ford (VSB No. 68153)
Peter A. Pentony (VSB No. 94012)
WILLIAMSFORD
101 Loudoun Street, S.W.
Leesburg, Virginia 20175
(703) 777-6535
(703) 777-6963 Facsimile

William E. Johnson (VSB No. 27810)
The Johnson Law Center
6558 Main Street, Suite 6
Gloucester, Virginia 23061
(804) 694-1111
(804) 694-1100 Facsimile

*Counsel for Plaintiff*